**Larry E. HARRIS, Petitioner,**

v.

**The STATE OF NEBRASKA and Maurice H. Sigler, Warden of the Nebraska Penal and Correctional Complex, Respondents.**

**Civ. 1707 L.**

United States District Court,
D. Nebraska.

Sept. 3, 1970.

No appearance for petitioner.

Clarence A. H. Meyer, Atty. Gen. of Nebraska, for respondents.

## MEMORANDUM

URBOM, District Judge.

The petitioner herein, Larry E. Harris, is presently incarcerated in the Nebraska Penal and Correctional Complex. On June 1, 1970, this court entered an order permitting a petition tendered by Harris to be filed without prepayment of costs pursuant to 28 U.S.C.A. § 1915. At the same time the respondents were ordered to show cause within ten days why the writ should not be issued. In response to that order the respondents filed a return on June 10, 1970, requesting the application for writ of habeas corpus be denied and dismissed. This case will be decided on respondents' motion to dismiss, without an evidentiary hearing.

After careful examination of the file and records in this case, the court concludes that the material facts are not in dispute but only the proper conclusions of law to be derived from those facts. The decision to dispense with the evidentiary hearing has been sanctioned by Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963),

wherein the United States Supreme Court stated:

" * * * The appropriate standard * * * is this: *Where the facts are in dispute,* the federal court in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding. * * *" (Emphasis added)

The respondents' return specifically admits the factual matters set forth in the statement of facts appearing in the Harris petition. Consequently, the task confronting the court is to resolve the conflicting legal conclusions urged upon the court by the parties.

The petitioner has raised the legal consideration as to whether an indigent state prisoner has a constitutionally secured right to obtain a copy of certain legal documents and records for the expressed intent of collaterally attacking his conviction by following the procedure required under Nebraska's postconviction statute, without first setting out facts in his petition for post-conviction relief which support a claim that constitutional rights were infringed.

The undisputed facts indicate that Harris filed a motion for legal documents in the District Court of Lancaster County, Nebraska. In that motion he requested the district court to provide "legal documents" and "Record of his case" for use in preparing a motion to vacate and set aside his conviction and sentence under the post-conviction statute. Neb.Rev.Stat.Supp.1969 §§ 29–3001 to 29–3004. The district court denied the motion. Harris then appealed to the Supreme Court of Nebraska. On appeal the Supreme Court in Harris v. Sigler, 185 Neb. 483, 176 N.W.2d 733 (1969) affirmed the district court decision in the following language:

"The declared purpose of the petitioner was to attempt to determine whether or not he might have any grounds for filing a motion to vacate sentence under the Post Conviction Act. If the motion be treated as a motion for documents, denial would be interlocutory and not appealable. Lund v. Holbrook, 157 Neb. 854, 62 N.W.2d 112. If the matter be treated as a motion to vacate a sentence, as it apparently was by the trial court, it alleged no facts whatever which would entitle the petitioner to relief. While there is no requirement that allegations be in any technical form, nor that the grammar be any more than substantially understandable, the allegations must set forth facts. * * *"

In Stewart v. Sigler, Civ. 1726 L, this court took the position that a state prisoner does not have a constitutionally secured right to a free transcript to pursue collateral relief in the state courts. However, this is not to say that the state may refuse an indigent state prisoner access to a transcript as a preparatory tool in his collateral attack, *when facts set forth in his petition or affidavit support his position that certain constitutional rights may have been infringed during the course of the criminal proceedings.* The holding set forth in Harris v. Sigler, supra, explicitly supports the right of an indigent state prisoner to secure legal documents for purposes of collateral attack in a case where *allegations of fact indicate a deprivation of constitutional rights.*

The petitioner did not limit his request in state district court merely to obtaining a free transcript of his criminal trial but demanded he be furnished with the following records: " * * * copies of the complaint, arrest warrant, proceedings at preliminary hearing, proceedings at arraignment, all motions filed, proceedings at sentencing, commitment papers, and any other legal documents pertaining to the transcript and bill of exceptions in his criminal case." See Harris v. Sigler, 185 Neb. at 483, 176 N.W.2d at 734. Therefore, this case is distinguishable from *Stewart,* supra, at least in terms of the magnitude of legal documents requested. However, the court concludes it would be premature to decide which of these records the petitioner has a right to, if any, since he

has failed to pinpoint any constitutional violations, by setting forth factual allegations, in his motion to vacate filed in the state court. Instead, the court is faced with a narrower consideration, that is, the right of an indigent state prisoner to obtain *any* legal documents from his state criminal proceedings, free of cost, without first alleging the relevance of that document to the alleged constitutional violation.

Mr. Justice Brennan in Wade v. Wilson, 396 U.S. 282, 90 S.Ct. 501, 24 L.Ed. 2d 470 (1970) observed that the issue of whether an indigent state prisoner is entitled to a free transcript, unconditionally, as a matter of constitutional right had never been directly decided by the Supreme Court of the United States.[1] Mr. Justice Brennan's statement in *Wade*, supra, is meaningful only when viewed in the context of prior Supreme Court decisions[2] that have dealt with the rights of indigent state prisoners. Consequently, the court believes it would be fruitful to set forth the holdings of these earlier cases, so that questions as to their applicability to the present case can be put to rest.

In Smith v. Bennett, 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961) the Supreme Court invalidated an Iowa statute requiring a filing fee for habeas applicants.

In Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956) the Supreme Court held an indigent state prisoner was entitled to a free transcript to effect an appeal of his state criminal conviction to the state supreme court. In contradistinction, the petitioner in this case has requested legal documents to pursue post-conviction relief, a remedy provided after a direct appeal of the conviction.

In Long v. District Court, 385 U.S. 192, 87 S.Ct. 362, 17 L.Ed.2d 290 (1966) the Supreme Court held that a state is required to provide an indigent state prisoner with a free transcript to appeal an adverse decision from a post-conviction proceeding to the state supreme court. *Long*, supra, is *distinguishable* in two respects: (1) the legal document(s) requested; in *Long* the request was for a transcript of the post-conviction evidentiary hearing contrasted to all the legal documents compiled during the criminal proceedings. (2) The purpost of the request; in *Long* the petitioner wanted the transcript for use in preparing an *appeal* from an adverse decision in a collateral proceeding, while the petitioner in this case seeks documents for use in preparing a motion to vacate, the initial step taken under the state post-conviction remedy.

Moreover, in Lane v. Brown, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892 (1963) the Supreme Court held an Indiana procedure which denied an indigent state prisoner the right to appellate review of a denial of a writ of error coram nobis, solely because of his poverty, conflicted with the Fourteenth Amendment. According to the Indiana law an appeal from a denial of a writ of error coram nobis could be perfected only by the petitioner's filing of a transcript of the hearing. In contrast, there is no requirement under Nebraska's post-conviction statute requiring a petitioner to first file legal documents compiled during his criminal proceedings, before the district court will review the motion to vacate on its merits. Also, as in *Long*, supra, the court was faced with a state procedure restricting the right to appeal from collateral proceedings to the state supreme court for review.

In Roberts v. LaVallee, 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967) the Supreme Court held that a state could not interpose a financial consideration,

---

1. While the Supreme Court raised the issue in its opinion, it did not decide the issue in *Wade*. The court in *Wade* merely held that both the district court and court of appeals had prematurely decided the constitutional issue. Only after Wade had been unsuccessful in his efforts to receive a transcript at state expense from the proper California officials could the district court reach the constitutional issue.

2. The cases herein analyzed appear in footnote 2 of Wade v. Wilson, 396 U.S. at 284, 90 S.Ct. 501.

impossible for the prisoner to meet because of his poverty, which required an indigent state prisoner to either pay for the recorded minutes of his preliminary hearing or to proceed through his criminal trial deprived of these minutes. While Harris has also made a request for a transcript of his preliminary hearing, the *Roberts* holding is limited to providing the transcript for use during the criminal trial. *Roberts* does not hold an indigent state prisoner is entitled to a transcript of his preliminary hearing, irrespective of the intended use by the prisoner or defendant.

Lastly, Gardner v. California, 393 U.S. 367, 89 S.Ct. 580, 21 L.Ed.2d 601 (1969) does not support the legal principle urged on this court by the petitioner. In that case an indigent state prisoner was deprived of a free transcript of the post-conviction evidentiary hearing, which had been conducted in a lower California court. The Supreme Court held the denial of a free transcript to the state prisoner, who was not seeking to appeal an adverse decision but intended to draft a new habeas corpus petition to a higher state court, resulted in invidious discrimination. While Harris is also seeking legal documents to prepare a post-conviction petition in state court, his request concerns records compiled during his criminal proceedings as opposed to Gardner's request, which was for a record of a prior post-conviction proceeding to be used in a subsequent post-conviction proceeding. Furthermore, *Gardner* concerns the peculiar state post-conviction remedies existing in California, where a state prisoner may proceed with a collateral attack in one of two courts, which occupy different judicial levels of authority.

In summary, the Supreme Court of the United States has established equal rights for indigent prisoners in four major areas: (1) A requirement of the payment of the filing fees in a state habeas corpus proceeding before the case will be docketed is unconstitutional; (2) A requirement of the payment of the transcript cost before an indigent state prisoner may receive a copy of his state criminal record for purpose of direct appeal is unconstitutional; (3) A requirement of the payment of the transcript cost before indigent state prisoner may receive a copy of the proceedings of his state evidentiary hearing is unconstitutional, where an attempt is being made to appeal or draft a new petition in a second collateral proceeding, and (4) A requirement of the payment of the transcript cost before an indigent state prisoner may receive a copy of his preliminary hearing record for utilization during the criminal trial is unconstitutional.

It is clear, therefore, that the Supreme Court of the United States has not decided the issue in the present case. Accordingly, attention is directed for guidance to those lower federal courts which have had the opportunity to consider and decide this issue. The lower federal courts have not construed the "indigent rights" cases discussed, supra, to mean that a state prisoner has an absolute constitutional right to a transcript when he seeks to pursue his initial state collateral remedies and when the transcript is a record of the criminal trial.

In Hines v. Baker, 422 F.2d 1002 (C.A. 10th Cir. 1970) the United States Court of Appeals for the Tenth Circuit recently rejected a petitioner's contention that as "an indigent he is deprived of a transcript of the original New Mexico criminal trial proceedings for use in his federal habeas corpus case, and has therefore been denied equal protection in violation of his federal constitutional rights." *Hines*, supra, specifically addressed itself to the Supreme Court's decision in *Wade*, supra, and decided:

" *  *  * (T)he denial of Hines' claim for a transcript should be affirmed for lack of merit, since *Wade*, does not intimate that the State or Federal Government must furnish a transcript for exploratory use in collateral federal proceedings, nor change the rule followed by this Court against requiring such exploratory aids for collateral relief. *  *  *"

The United States Court of Appeals for the First Circuit in Benthiem v. United States, 403 F.2d 1009 (C.A. 1st Cir. 1968) rejected a federal prisoner's request for a free transcript of his criminal trial for use in federal collateral relief procedures pursuant to 28 U.S.C.A § 2255.

The United States Court of Appeals for the Eighth Circuit in Culbert v. United States, 325 F.2d 920 (C.A. 8th Cir. 1964), affirmed an order by the district court denying the petitioner's motion which requested "a transcribed copy of the trial minutes and records * * * as a poor person, without costs," stating:

" * * * We have carefully examined all the files, papers and records from the inception of the criminal charges, and we are satisfied that appellant is on a fishing expedition—he desires a transcript at Government expense with some vague hope of discovering a flaw in the proceedings which would entitle him to make collateral attack upon the judgment. * * * "

Except for the fact that Culbert concerned a request of a federal prisoner, it is indistinguishable from the case at hand. Moreover, if there is no absolute constitutionally secured right to a "transcribed copy of the trial minutes and records" of the criminal proceeding for a *federal* indigent prisoner pursuing collateral attack, it necessarily follows that an indigent state prisoner should not be allowed to conduct a fishing expedition in state collateral relief proceedings. See also United States v. Glass, 317 F.2d 200, (C.A. 4th Cir. 1963) Ketcherside v. United States, 317 F.2d 807 (C.A. 6th Cir. 1963); United States v. Lawler, 172 F.Supp. 602 (U.S.D.C.S.D.Tex. 1959). Any other result would be incongruous and illogical.

What policy reason is there for refusing to extend the "indigent rights" cases to cover this case? Judge Haynsworth stated the grounds for maintaining the present rule in United States v. Shoaf, 341 F.2d 832 (C.A. 4th Cir. 1964), wherein he commented:

"The usual grounds for successful collateral attacks upon convictions arise out of occurrences outside of the courtroom or of events in the courtroom of which the defendant was aware and can recall without the need of having his memory refreshed by reading a transcript. He may well have a need of a transcript or a partial transcript to support some ground of collateral attack, but rarely, if ever, would the defendant, himself, need a transcript of the trial to become aware of the events or occurrences which constitute ground for collateral attack."

This court reaffirms its earlier position taken in Stewart v. Sigler, supra, and now specifically holds that an indigent state prisoner does not have an absolute or unconditional right to receive a free transcript or other records arising from his state criminal proceedings for the purpose of collateral attack in state courts but must first allege in his motion to vacate or other tendered documents facts which show that he has been deprived at some point in the past criminal proceedings of a constitutional right which the post-conviction remedy is designed to protect. He has no right to demand a free transcript or other papers for the purpose of learning whether some constitutional right was violated.

The Attorney General, in his return, does not assume the position that an indigent state prisoner should never be entitled to a transcript or other records of his criminal trial, but merely contends before these records are provided, at state cost, the petitioner must come forward with facts indicating that his conviction may be subject to collateral attack. The State of Nebraska has the power, without running afoul of the equal protection clause of the Fourteenth Amendment, to require a showing of need before providing an indigent state prisoner a free transcript or other records, in his efforts to pursue collateral attack. Since the petitioner herein seeks a free copy of legal documents and records of his criminal case, without show-

ing that any constitutional right was violated, this court concludes the claim lacks merit and will order the petition dismissed.